35 C.C.P.A.(Patents)

THOMAS et al. v. MICHAEL et al.

Patent Appeal No. 5349.

Court of Customs and Patent Appeals.

Jan. 27, 1948.

Rehearing Denied April 14, 1948.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associated Judges.

Charles M. Thomas, of Washington, D. C. (Clarence O. McKay, of Washington, D C., of counsel), for appellants.

Samuel Z. Gordon and Loretta I. Martone, both of Washington, D. C., for appellees.

O'CONNELL, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of the invention defined by the single count in issue to the appellees herein.

The interference is between appellees' application No. 345,366, filed July 13, 1940, which is alleged to be a division of their application No. 222,144, filed July 30, 1938; and appellants' patent No. 2,285,314,

issued June 2, 1942 on their application No. 236,549, filed October 22, 1938, which is alleged to be a continuation-in-part of their application No. 171,986, filed October 30, 1937.

Title to appellants' interest in the subject matter of the count, as described in their brief, is vested in the Universal Oil Products Company. Title to appellees' application was vested in the Alien Property Custodian and is now claimed by the Attorney General of the United States as successor to the custodian.

The count, which originated in appellants' patent, reads:

"A process for producing catalysts which comprises suspending silica hydrogel in an aluminum salt solution, adding a volatile basic precipitant to precipitate hydrated alumina, and drying the resultant silica-alumina composite."

The subject matter of the count, and the light in which appellants contend it should be construed, are described in the brief of counsel for appellants as follows:

"The count relates to a *process* for producing a *silica-alumina composite catalyst.* It is not restricted to the production of a catalyst capable of promoting any specific type of reaction. It defines a *novel process* for producing *an old and well-known silica-alumina composite catalyst,* the utility of which had long been demonstrated by Thomas et al. and other prior art workers. * *. * (Italics quoted)

\* \* \* \* \* \*

In simple language the count defines a process for producing a catalyst, including the steps of (1) mixing with silica hydrogel an aluminum salt solution, (2) adding to the mixture a volatile basic precipitant, which may be ammonium hydroxide, which results in precipitation of hydrated alumina, and (3) drying the hydrated silica-alumina composite for the purpose of removing water and evaporating the volatile basic precipitant from the mass."

Attorneys for appellees also state in their brief that:

"The catalyst produced by the process of the count is a composite of silica and alumina hydrogel, and its effectiveness as a catalyst is measured by the results obtained in the cracking processes in which it is employed. Six examples of such processes are given in appellees' application (R. 9-12) and three such examples are given in appellants' patent (R. 83-84), in all of which the utility of the catalyst used is measured by the amount of motor gasoline and light oil produced and their quality. These are the criteria for good catalysts in this art."

No testimony was offered by appellees who asserted reliance on the effective date of their German application, No. I.58,775, filed August 9, 1937, for conception and constructive reduction to practice. Appellants offered evidence in the form of affidavits containing stipulated oral testimony together with certain documentary exhibits, including log sheets and progress reports. No objection or rebuttal was offered in the interference relative to the testimony thus submitted by appellants.

Appellees have called attention to the fact, and the board noted, that the stipulated testimony includes the depositions of appellants Thomas and Ahlberg, co-applicants and chemists; Kinneberg, chemist, and Fitzpatrick and Cain, assistants; and that all such witnesses were employees of the Universal Oil Products Company during the period of 1937 covered by their testimony, although Kinneberg and Fitzpatrick were not employed by the company at the time the depositions were taken.

There is otherwise no disparagement of the testimony offered by appellants, and the statement in the brief of their counsel that Thomas and Ahlberg are both experienced scientists and chemists of high standing in the art of catalystic cracking is in nowise disputed.

Appellees were accorded the effective date of their German application, filed August 9, 1937. Appellants were accorded the effective date of their application, filed October 30, 1937, and were therefore the junior party to the interference.

The board held that a preponderance of the evidence established that appellants were the first to conceive the invention of the count but failed to establish either that they were the first to reduce the invention to practice or that they were diligent during the critical period.

Appellant Ahlberg testified that on June 16, 1937, he prepared a memorandum in his notebook 410, page 108, describing the invention of the count and began the preparation of the catalyst therein described; that between June 17 and June 24, 1937 he and the witness Fitzpatrick carried out the separate and successive steps of the process described in his notebook and obtained a composite which was placed in a bottle and labeled "410-108" in accordance with the number and page of the notebook.

The board found that the invention described in Ahlberg's notebook set forth the procedure for preparing a composition which corresponded in its essential steps to the process of the count; and that the testimony of Ahlberg, Kinneberg, and Fitzpatrick adequately established the fact that appellants carried out the process of the count and obtained a composite identified as "Catalyst 410-108."

The board held, however that "since the count calls for a process *for producing catalysts*," the mere carrying out of the process was not sufficient to effect its reduction to practice for the reason that:

"It is not shown, and it is not apparent, that the utility of the catalyst was known at the time it was prepared. Tests establishing the utility of the products were, accordingly, an essential element of the reduction to practice. As far as the record shows the untested silica-alumina composite was merely a subject of speculation on the part of Thomas et al., rather than a product of proven usefulness."

The foregoing decision of the board was made on a point which was not presented to it for decision by either party to the interference.

There was no contention before the board that the work which was done on June 17 to 24, 1937, by appellant Ahlberg and his assistant Fitzpatrick did not constitute reduction to practice. The sole contention made by appellees, as disclosed by the record, was that Ahlberg's testimony as to the work he had performed on those dates had not been sufficiently corroborated.

That contention was discussed and rejected by the board in the following language:

"The testimony of Ahlberg, Kinneberg and Fitzpatrick is believed adequate to establish the fact that Thomas et al. carried out the process of the count in issue and obtained a composite identified as "Catalyst 410-108". Michael, et al. contend that there is no adequate corroboration of Ahlberg's testimony as to the preparations of the catalyst and state that Kinneberg does not make clear what he means by such expressions as "observing the work" or "performed in my presence." Michael, et al. assert that there was nothing in the record to indicate that Kinneberg personally tested the reagents to determine for himself what was being done. It does not appear, however, that the chemicals used were so complex, unusual, or so foreign to those used in the laboratory's normal research on catalysts that Kinneberg could not or did not ascertain for himself the identity of the chemicals employed. The testimony of Kinneberg does not justify the Michael, et al. comment that Kinneberg was "taking Ahlberg's word for it." The statements made by Kinneberg are unequivocal in nature and there is no presumption that his testimony on the laboratory arrangement and the research group organization is a limitation on these unequivocal statements. The testimony is stipulated but this does not provide warrant for challenging Kinneberg's statements on the ground that Kinneberg meant something else than what he said."

The holding of the board, as hereinbefore described, was based on the ground that the utility of the catalyst produced by appellants was not known at the time it was prepared. The question presented is whether the utility of that product was or was not known in the art at that time.

Where the utility of a new product produced by a novel process is not known or apparent, a test is required to establish reduction to practice of that process. See Bogoslowsky v. Huse, 142 F.2d 75, 78, 31 C.C.P.A., Patents, 1034, 1038. But where the utility of an old product produced by a novel process is known, a test is not required to establish reduction to practice of that process. See Larson v. Eicher, 49 F.2d 1029, 1031, 18 C.C.P.A., Patents, 1497;

Fenton R. Brydle v. Harry H. Honigbaum, 54 F.2d 147, 19 C.C.P.A., Patents, 773; Kyrides v. Bruson, 102 F.2d 416, 26 C.C.P.A., Patents, 986.

■ Referring to the expressed view of the board that that utility of appellants' product was not known or apparent at the time it was prepared by them, appellants assert that:

"The record refutes this view. The prior art of record, but overlooked by the Board, establishes that the utility of a silica-alumina composite catalyst for promoting cracking had been demonstrated prior to the production of the silica-alumina composite catalyst 410-108 in June 1937. This prior art was not discussed in the briefs below because the issue here decided by the Board was not in controversy between the parties. Possibly this explains why it was overlooked."

The prior art of record comprises the patent to Gayer, 2,068,016 of January 19, 1937; the patent to Houdry, 2,141,185 of December 27, 1938; the patent to Voorhees, 2,247,535 of July 1, 1941; and the patent to Thomas et al., 2,282,922 of May 12, 1942, issued on their application filed March 20, 1937.

While the respective processes defined by the prior art of record differ from the process of the count, the disclosures of that art establish beyond a doubt that prior to June, 1937, the utility of a silica-alumina catalyst was known and had been demonstrated. Appellees contend, however, that

"There is nothing in the opinion of the Board of Interference Examiners to support the contention made in appellants' brief (p. 11) that the Board believed that the utility of other silica-alumina catalysts had not therefore been demonstrated. In saying "It was not shown, and it is not apparent, that the utility of the catalyst was known at the time it was prepared" (R. 182) the Board obviously referred only to the particular composition produced by the count in issue."

The difficulty with appellees' contention on the point in question is that the board in its opinion made no distinction between the silica-alumina catalyst of the count and other silica-alumina catalysts. The board specifically held, and we quote its language, including the part thereof which it italicized, that "since the count calls for a process *for producing catalysts,*" a test establishing the utility of the product was an essential element of the reduction to practice.

Appellees further contend that the interference involves a highly technical chemical composition and since there is no manifest error in the decision of the board, the decision should be affirmed.

The board in that part of its decision which we quoted hereinbefore pointed out that it does not appear that the chemicals used by appellants in producing the product of the count were so complex, unusual, or so foreign to those used in the laboratory's normal research on catalysts that a witness could not or did not ascertain for himself the identity of the chemicals employed.

No issue was raised before the board, and appellants have in nowise contended at any time, that the composition produced by the process of the count was new or novel. Appellants' position, as hereinbefore described, was based solely on the ground that the product of the count was an old composition the utility of which had been known and demonstrated at the time it was prepared by them in June, 1937.

We are convinced, for the reasons stated, that the utility of the catalyst produced by appellants in carrying out the process of the count on June 17 to 24, 1937, was known not only in the art but also was known to appellants herein; and that the decision of the board requiring a test of the catalyst to effect its reduction to practice was manifestly wrong.

In view of that conclusion it is unnecessary to discuss and pass upon other points raised by the respective parties herein.

The decision of the Board of Interference Examiners is accordingly reversed, and priority of the invention of the count is awarded to the appellants, Charles L. Thomas and Jacob E. Ahlberg.

Reversed.

BLAND, Judge, sat during the argument of this case, but resigned before the opinion was prepared.